[Crim. No. 1392. Third Appellate District.—December 3, 1934.]

THE PEOPLE, Respondent, v. JAMES B. O'NEAL et al., Appellants.

James B. O'Neal, *in pro. per.*, Paul E. Gehres and O. C. Parkinson for Appellants.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendants were jointly charged under the provisions of section 211 of the Penal Code with the crime of robbery committed by feloniously taking an automobile from the possession of the owner thereof by the exercise of force. In the same information O'Neal was charged with three prior convictions of other felonies. Each defendant pleaded not guilty of the present charge of robbery. O'Neal admitted two of the charges of prior convictions of felonies. He denied that he was previously convicted in Montana on a charge of murder of the second degree. The defendants were jointly tried with a jury. Separate verdicts were returned finding O'Neal guilty of robbery of the first degree, and that he had suffered a prior

conviction of murder of the second degree in Montana as alleged in the information. Mae Stockdale was found guilty of robbery of the second degree. Separate judgments of commitment were rendered against the defendants. From these judgments and the orders the defendants have per-'fected separate appeals. These appeals are brought to this court in a single record.

In pronouncing sentence the court determined from the evidence which was adduced at the trial that O'Neal was armed with a deadly weapon at the time of the commission of the present charge of robbery; that he also suffered the three prior convictions of felonies with which he was charged, for each of which he had served separate terms of imprisonment. Thereupon the court adjudged O'Neal to be an habitual criminal under the provisions of section 644 of the Penal Code, and sentenced him to imprisonment for life in the state prison at Folsom. His application for parole was denied. The appeal of the defendant O'Neal will be first considered.

■ The evidence is ample to support the verdict and judgment of conviction of James O'Neal of robbery of the first degree including the necessary element of intent on the part of the defendants to feloniously take the automobile by the exercise of force and fear. The intention with which an act is performed may be manifested by the circumstances of the case. (Sec. 21, Pen. Code.)

The defendants procured Carl Morlath of Sacramento to take them in his taxicab to Stockton. O'Neal sat with the owner of the car in the front seat. Mae Stockdale sat in the rear seat. Immediately after they left Sacramento, O'Neal took out a pocket knife and placing it against Morlath's stomach ordered him to drive down the highway until they reached Elk Grove, where they stopped for gasoline. While they were at the gas station O'Neal kept his knife ready for action. Mr. Morlath testified that when they left the gas station, O'Neal told Mae Stockdale "to take the gun out of the grip and keep me covered". He said: "Mrs. Stockdale was in the back seat and she said she had me covered and I was afraid to look around in the back seat and I kept on going." When they reached Manteca they drove on to a side road, and O'Neal said "drive off the main road and park . . . I need the car to make a get-away. . . . I am going to take the car, you get out and walk."

Morlath was forced out of the car, and the defendants drove away. The owner of the machine hailed a passing automobile and rode in that car until they overtook a highway patrol officer. He then accompanied that officer until they overtook and captured the defendants, who were then arrested and taken in custody. The knife was taken from the possession of O'Neal, but no revolver was found. The evidence shows that the automobile was feloniously taken from the possession of Morlath by means of the threat to use a knife, which constitutes the necessary exercise of force and warrants the implied finding of the existence of fear on the part of the owner of the car. The circumstances clearly indicate an intention on the part of the defendants to steal the machine contrary to the provisions of section 211 of the Penal Code.

The information sufficiently charges the defendants with the crime of robbery in substantially the language of section 211 of the Penal Code. It was not necessary to designate the specific means by which the alleged force or fear was accomplished. Nor was it necessary to charge that the automobile was seized by means of the use of a knife or that O'Neal was then armed with a deadly weapon. (*People* v. *Covington,* 1 Cal. (2d) 316 [34 Pac. (2d) 1019]; *People* v. *Tognola,* 83 Cal. App. 34 [256 Pac. 455]; *People* v. *Hayes,* 118 Cal. App. 341 [5 Pac. (2d) 439]; *People* v. *Colford,* 68 Cal. App. 308 [229 Pac. 63]; secs. 950–952, Pen. Code.)

Nor does the form in which the information was filed violate the fourteenth amendment to the Constitution of the United States which declares that no person shall be deprived of his liberty without due process of law. (*People* v. *Covington, supra.*)

It is not necessary in a charge of robbery for the verdict to name the weapon, if any, which is used in the commission of the offense, nor is it necessary for the jury to find in the verdict that the instrument, if one is used in the perpetration of the crime, is in fact a deadly weapon. (*People* v. *Tognola, supra.*) The verdict is sufficient if it finds that the accused is guilty of either robbery of the first degree or robbery of the second degree. (Sec. 1157, Pen. Code; 8 Cal. Jur. 406, sec. 435.)

The record supports the court's finding that the defendant O'Neal was armed with a deadly weapon at the

time of the commission of the crime. It appears that O'Neil held an open pocket knife against the stomach of Morlath threatening to stab him if he did not obey his commands. The knife was received in evidence, and the court had the opportunity to examine it. The record fails to show the length of its blade. Under such circumstances we must assume that an inspection of the weapon shows that it had a blade over five inches in length, and that it fulfills the definition of a knife used as a "deadly weapon", for the purpose of pronouncing sentence under the provisions of section 1168 of the Penal Code. ■ Moreover, it is immaterial, under the circumstances of this case, whether the knife fulfills the requirements of section 1168 of the Penal Code, or not, with respect to the character of that weapon, for the reason that the defendant was convicted of robbery together with three other prior convictions of felonies, which required the court to sentence him, under the provisions of section 644 of the Penal Code, to imprisonment for life without the privilege of parole, regardless of whether he is guilty of robbery of the first or the second degree, and independently of whether he was armed with a weapon at the time of the commission of the offense. But there is ample evidence that O'Neal used an open pocket knife in perpetrating the crime of robbery.

■ The evidence sustains the implied finding of the jury that O'Neal was "armed with a dangerous or deadly weapon", as that term is used in section 211a of the Penal Code in defining robbery of the first degree. (*People* v. *Seaman*, 101 Cal. App. 302 [281 Pac. 660].) An open pocket knife held at the stomach of an assailed person with a threat to stab him may constitute a deadly weapon even though the blade of the knife is less than five inches in length. (*People* v. *Caberera*, 104 Cal. App. 414 [286 Pac. 176].) A dangerous or deadly weapon has been frequently described in our authorities as any weapon or instrument which, from the manner that it is used or attempted to be used, is likely to produce death or cause great bodily injury. The jury was so instructed in this case. ■ The term "deadly weapon" as it is employed in section 1168 of the Penal Code, which includes "any knife having a blade longer than five inches", is confined exclusively to the application of that section for the purpose

of determining the minimum penalty for the commission of a felony. (*People* v. *Caberera, supra.*)

The appellant O'Neal is mistaken in asserting that the court was guilty of prejudicial error in permitting the clerk to call the attention of the jury to the fact that he had suffered conviction of two prior charges of other felonies to which he had pleaded guilty. The record shows that in reading the information to the jury the clerk merely read the main charge and the one charge of a prior conviction of murder of the second degree committed in Montana, to which he had pleaded not guilty. The other two charges of prior convictions were omitted by the clerk in that procedure. This was in exact accordance with the procedure in that regard which is required by the provisions of sections 1025 and 1093 of the Penal Code.

The district attorney is charged with prejudicial misconduct in asserting in his opening statement to the jury that he expected to prove that immediately before the defendant O'Neal procured the taxicab which he is charged with stealing, he visited the maintenance yard of the state highway division in Sacramento and demanded the use of a car from Mr. Schaffer, the watchman, who refused to deliver it to him, saying that those machines belonged to the state and could not be rented or used by others, and that O'Neal then "seized an iron bar and hit this man Schaffer over the head, inflicting a severe injury". Upon objection to this statement, the court instructed the jury to disregard it, saying: "The statements of counsel constitute no evidence . . . and the jury is so instructed." We are satisfied the preceding statement of the district attorney does not constitute reversible error under the circumstances of this case, since the court instructed the jury that it was not to be considered as evidence, and they were subsequently instructed that their verdict must be based solely upon the evidence adduced at the trial, and that all statements of counsel are to be disregarded. (*People* v. *Garcia,* 83 Cal. App. 463, 469 [256 Pac. 876]; *People* v. *Davis,* 26 Cal. App. 647 [147 Pac. 1184]; *People* v. *Sing Yow,* 145 Cal. 1 [78 Pac. 235]; *People* v. *Pantages,* 212 Cal. 237, 244 [297 Pac. 890]; *People* v. *Wolcott,* 137 Cal. App. 355, 365 [30 Pac. (2d) 601].)

The evidence is sufficient to identify O'Neal as the individual who was convicted of murder of the second

degree in Montana under the name of Harvey Whitton as charged in the information. The duly authenticated copy of the commitment of Harvey Whitton to the Montana state prison at Deer Lodge, March 31, 1898, was received in evidence. It contained a photograph and minute description of that prisoner, including his height, weight, complexion, color of hair and eyes and the following identifying marks: "Dim scar on first finger of left hand. Dim scar on left shin below the knee. . . . " Charles Stone, an assistant officer in the state bureau of identification at Sacramento, testified that he knew the defendant O'Neal and had a conversation with him subsequent to May, 1933, in the identification bureau at Sacramento, in which he admitted to Mr. Stone that he had served a sentence in the Montana state prison at Deer Lodge under the name of Harvey Whitton. Warren Boalt, superintendent of the bureau of identification of San Joaquin County, testified that he knew the defendant O'Neal and upon examination of his body just prior to the trial of this case, he found "a scar on his left shin", and a "dim scar on the left index finger", conforming to the identifying marks which were certified to exist on the person of Harvey Whitton. ▮

The photograph which is attached to the Montana commitment is not before this court. It was submitted to the jury in the trial of the case and we must assume that it appeared to be the likeness of the defendant O'Neal. His identity as the same person who served time for the prior conviction of murder of the second degree in the state prison of Montana under the name of Harvey Whitton is sufficiently established. The certified copy of the commitment was duly authenticated and proved and it is competent evidence with which to establish the prior conviction of the defendant as alleged in the information. (*People* v. *Wilson*, 103 Cal. App. 420 [284 Pac. 988]; *People* v. *Howard*, 72 Cal. App. 561 [237 Pac. 780].)

▮ The court did not err in refusing to give to the jury defendants' proposed instruction number 6, which stated that if the jury found that the defendants did not take the automobile with the intention of stealing it, but took it only for temporary use without the owner's consent, it was the duty of the jury to acquit the defendants of robbery, but that, under such circumstances, they might be found guilty of the lesser offense prohibited by section 499b

of the Penal Code. The jury was clearly instructed that they could not convict the defendants unless they found that the automobile was taken by means of force or fear from the possession of the owner with intent to permanently deprive him of his property. One instruction in that regard reads in part:

"To constitute robbery therefore there must be an intent to steal, or permanently to deprive the prosecuting witness of his property in addition to the use of force or fear in the taking."

We are of the opinion that the crime of robbery does not include as a lesser offense contained therein the misdemeanor of taking a vehicle for temporary use without the permission of the owner, contrary to the provisions of section 499b of the Penal Code. The character of these offenses is entirely different. They do not contain the same elements. Robbery contemplates the stealing of property from the possession of the owner by means of violence, force or fear, with the intention of permanently depriving the owner of his property. The misdemeanor merely prohibits the taking of a vehicle for temporary use without the permission of the owner.

Moreover, the rejected instruction is defective and misleading. It fails to inform the jury that they might find the defendants guilty of a violation of section 499b only in the absence of satisfactory evidence that they were guilty of robbery. The proposed instruction merely states that if the jury finds from the evidence that the defendants had no intention of *stealing* the machine, they might find them guilty of the lesser offense. They were not charged with larceny of the car. The proposed instruction omitted any reference to the necessary elements of force or fear in the taking of the automobile. It was therefore properly refused. But assuming, without so deciding, that the instruction should have been given, its refusal does not constitute reversible error for the reason that there was no miscarriage of justice in finding the defendants guilty of robbery. The evidence is very convincing that they appropriated the car by means of force, with the intention of permanently depriving the owner of his property.

It was not prejudicial error, nor a violation of the provisions of section 1025 of the Penal Code, to permit the

prosecution to ask the defendant if he had not been previously convicted of other felonies, notwithstanding the fact that he had admitted two prior convictions with which he had been charged and denied a third charge of prior conviction. The defendant took the witness stand in his own behalf and testified to alleged facts in absolute conflict with the evidence adduced by the prosecution. By doing so he waived the provisions of section 1025 of the Penal Code. The prosecution had a perfect right to ask him on cross-examination if he had not been previously convicted of these other felonies for the legitimate purpose of impeachment. (*People* v. *Fontes,* 110 Cal. App. 141 [293 Pac. 835]; *People* v. *King,* 77 Cal. App. 434 [246 Pac. 822].)

There is no merit in the other contentions of the appellant O'Neal.

In the separate appeal of the defendant Mae Stockdale she contends that the verdict finding her guilty of robbery of the second degree is not supported by the evidence for the reason that there is an absence of any showing that the defendants intended to permanently deprive the owner of his automobile, and that the separate verdicts which were returned against the defendants are inconsistent.

There is no merit in either of these contentions. For the reasons heretofore assigned with relation to the appeal of James O'Neal, the evidence is sufficient to show that the defendants took the car intending to steal it, by means of a threat to stab the owner with a pocket knife and because they created fear on the part of the owner that Mae Stockdale might shoot him from her position in the back seat, if he failed to obey their orders. There is evidence that in response to O'Neal's request for her ''to take the gun out of the grip and keep me covered'', she replied that she had Morlath covered with the weapon. The evidence is sufficient to show that Mae Stockdale, being present, aided, abetted and encouraged the commission of the offense, which renders her guilty as a principal. (Sec. 31, Pen. Code.)

Since the evidence is ample to have sustained a conviction of the defendant Stockdale of the crime of robbery of the first degree, she may not complain that she was found guilty of the lesser offense of robbery of the second degree. The verdict was not prejudicial to the appellant

Stockdale on that account. ▮▮▮▮ It may be said to be too favorable to her. There is no merit in her contention that the verdict should be set aside and the cause reversed as to her because it is inconsistent with the verdict of the higher degree of robbery which was returned against her associate in the perpetration of the crime. (*People* v. *Muhlner*, 115 Cal. 303 [47 Pac. 128]; *People* v. *Hudson*, 92 Cal. App. 593 [268 Pac. 687]; sec. 1404, Pen. Code; 8 Cal. Jur. 420, sec. 445.)

The judgments and the orders against both appellants are affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 28, 1934.